The Full Commission has reviewed the prior Opinion and award based upon the record of the proceedings from the hearing and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified the prior decision to award continuing temporary total disability compensation and enters the following Opinion and Award.
***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties at the hearing on 21 September 1993 and in the Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the alleged injury by accident herein and Liberty Mutual Insurance Company was the carrier on the risk.
***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was a thirty-five year old female with a tenth grade education. Prior to 17 May 1991, plaintiff had been working for defendant-employer for several years.
2. On 17 May 1991, as plaintiff was walking between textile machinery at work at or near the end of her shift, she slipped and fell onto the floor as a result of stepping into silicone that had leaked from a spray can onto the floor. Silicone is a lubricant used on the textile machinery that is very slippery.
3. Pauline McClellan, plaintiff's direct supervisor and Norma Miller, the plant manager, had actual knowledge of plaintiff's accident and injury immediately after the incident. Ms. McClellan assisted plaintiff in getting up from the floor and in getting to the bathroom to examine her injuries. At said time, plaintiff complained of pain down the right side of her body; her right side was red and sore and her right wrist was beginning to swell.
4. Ms. McClellan took an oral statement from plaintiff concerning the accident immediately after it occurred. Plaintiff was requested to remain at work after her work day had ended in order to give an accident statement. Neither Ms. McClellan nor Ms. Miller reduced plaintiff's oral statement to writing.
5. Plaintiff returned to work the day after her fall, and with the assistance of her fellow employees, continued to do her job. At a time shortly after her injury, plaintiff was assigned to work in quality control, a lighter duty job. While working in quality control, plaintiff's pains from her 17 May 1991 injury gradually improved.
6. A day or two after the fall, plaintiff still had bruising in her right shoulder area extending down to her right leg. Plaintiff realized that she had been injured as a result of her fall, but she believed at that time that her injuries would resolve and that medical treatment was unnecessary.
7. After her assignment to a new position in the sewing department on or about 4 July 1991, plaintiff began experiencing recurring pain in her shoulder, burning and stinging sensations in her right arm and numbness of the right wrist and arm. Plaintiff's new job duties caused her to use a sewing machine and chair that were different from the ones she had worked on previously.
8. Plaintiff sought treatment at the Emergency Room at Rutherford Hospital on 23 September 1991. At said time, plaintiff complained of pain and numbness in her right arm and loss of the use of her right arm. Plaintiff's treating physician advised her not to return to work.
9. Plaintiff began treatment on 30 September 1991 with Dr. Hobart Rogers, an orthopaedic physician in Rutherfordton, North Carolina, who removed plaintiff from work through 11 November 1991.
10. Upon initial examination on 30 September 1991, Dr. Rogers found that plaintiff had decreased sensation over the extensor surface of her right forearm and shoulder, muscle spasms and tenderness in the right upper extremity. Dr. Rogers requested an MRI which revealed evidence of a minimal posterior lateral unseen process spurring and a small amount of hard disk at level C4-5 and C6-7. There was also evidence of minimal root compression.
11. Dr. Rogers opined that plaintiff's symptoms were not due to the repetitive motion of her current job, but were caused by her 17 May 1991 work related injury. He further opined that plaintiff received a neck injury as the result of her 17 May 1991 fall which caused right radiculopathy and decreased sensation on the extensor surface of her forearm and deltoid area. He released plaintiff to return to work on 12 November 1991.
12. Plaintiff returned to work as directed and continued working until 7 December 1991. Plaintiff was unable to continue working thereafter due to the level of pain she experienced while trying to perform her job.
13. Subsequent to her leaving work because of her ongoing pain, plaintiff was seen by Dr. Hobart Rogers only once because she could not afford further medical treatment. Defendants denied liability for her injures and her subsequent disability.
14. Plaintiff sustained an injury by accident arising out of and during the course of her employment with defendant-employer on 17 May 1991 when she slipped and fell after stepping into silicone that had leaked onto the floor. Although injured, plaintiff's fall did not cause any incapacity to earn wages until 23 September 1991.
15. As a result of her 17 May 1991 injury by accident, plaintiff was unable to earn wages in her former position with defendant-employer or in any other position from 23 September 1991 through 11 November 1991.
16. Plaintiff again attempted to return to work on 12 November 1991. However, she was again forced to stop working on 7 December 1991 because the level of pain she was experiencing prevented her from performing her job duties. Plaintiff's testimony on this issue is credible. Plaintiff's conduct after the injury demonstrated a willingness to work in that she continued to work after the initial injury even though parts of her body were bruised and swollen and she was in pain. Plaintiff continued to work even after her pain recurred in July 1991 and did not stop working until her pain became so unbearable that she had to seek medical attention and was taken out of work by her doctor. Plaintiff returned to work when released by her doctor.
17. On 20 September 1994, plaintiff, as a result of a referral from her treating physician Dr. Hobart Rogers, presented to Dr. Perez-Limonte, a licensed North Carolina neurologist. After examining the plaintiff, Dr. Perez-Limonte opined that the plaintiff suffered from bilateral carpal tunnel syndrome and that her level of carpal tunnel syndrome would impair her physical abilities.
18. Dr. Hobart Rogers, a board-certified orthopaedist, examined the plaintiff again on 23 August 1994. Dr. Rogers initially examined and treated the plaintiff on 30 September 1991. During the 23 August 1994 visit, Dr. Rogers noted that plaintiff was still unable to work and was still complaining of pain.
19. On 5 December 1995, Dr. Rogers found that plaintiff had reached maximum medical improvement and assigned a permanent partial disability rating of ten percent (10%) to the cervical spine based on four years of pain, headaches and loss of sensation. Dr. Rogers opined that the headaches and loss of sensation were a result of the plaintiff's spinal injury.
20. On 28 March 1996, Dr. Benson Hecker, a rehabilitation consultant vocational expert interviewed the plaintiff. Dr. Hecker opined that the plaintiff continued to be unable of earning wages in the competitive job market. Dr. Hecker opined that there were jobs she could do intellectually, but her medical conditions would not allow her to perform the necessary physical tasks.
21. On 5 May 1996, Maria King, a rehabilitation counselor, began working with the plaintiff. After working with the plaintiff, Ms. King opined that there were some sedentary jobs that were available for the plaintiff within her restrictions. However, these positions were entry level jobs and were not suitable for plaintiff. Therefore, plaintiff was justified in refusing these positions.
22. After giving careful consideration to the testimony of the experts and doctors in this matter, greater weight is given to the opinions of Dr. Rogers as the treating physician, and to the opinions of Dr. Hecker a rehabilitation consultant vocational expert.
23. In G.S. § 97-2(9), disability is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." Thus, "disability" under the Act relates to an employee's capacity to earn wages following a compensable injury, not to the employee's physical condition. Our Supreme Court has established that in order to find an employee disabled, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment; (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and; (3) that this individual's incapacity to earn wages was caused by his injury. See Hilliardv. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Based upon these standards, plaintiff has met her initial burden of proving that she was totally disabled as the result of her injury by accident and proper findings on this issue have been entered by the Full Commission.
24. Having met her initial burden of proving total disability, plaintiff is entitled to a rebuttable presumption that her disability will continue until she returns to work at the same or greater wages. A defendant may rebut this presumption by producing evidence that:
 (1) suitable jobs are available for the employee; (2) that the employee is capable of securing said job taking into account the employee's physical and vocational limitations, and; (3) that the job would enable the employee to earn some wages. Brown v. S N Communications, Inc., 124 N.C. App. 320, 477 S.E.2d 197 (1996). The Court of Appeals has specifically held that a finding that the employee has reached maximum medical improvement does not rebut this presumption as this finding "is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury." Id.
Therefore, even though plaintiff reached maximum medical improvement on 5 December 1995, the burden of proof remained with defendant to produce sufficient evidence to rebut the presumption of continued disability. In response to this burden, defendant has produced no evidence that any suitable jobs were available for or offered to plaintiff. Therefore, plaintiff, whose disability was total prior to 5 December 1995, is entitled to the presumption of continued total disability subsequent to that date.
25. As the result of her 17 May 1991 injury by accident, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other position the for the period of 7 December 1991 through the present and continuing.
26. Plaintiff's average weekly wage at the time of the injury was $366.52 per week, yielding a compensation rate of $244.46 per week.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage at the time of the injury was $366.52 per week, yielding a compensation rate of $244.46 per week. G.S. § 97-2(5).
2. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 17 May 1991 when she slipped and fell on a slick spot on the floor at work caused by leakage of silicone from a can. G.S. § 97-2(6).
3. Defendants received proper notice of plaintiff's injury by accident arising out of and in the course of her employment as required by law. G.S. § 97-22.
4. Having met her initial burden of proving his disability, plaintiff is entitled to the rebuttable presumption of continuing disability. G.S. § 97-2(9); Watson v. Winston Salem TransitAuthority, 92 N.C. App. 473, 374 S.E.2d 483 (1988). Because plaintiff's inability to earn wages in her former position with defendant-employer or in any other position continued subsequent to 5 December 1995, her disability continued to be total and she continued to be is entitled to the presumption of continued total disability. Id. Defendants have failed to produce evidence that suitable jobs were available to plaintiff subsequent to 5 December 1995 and have otherwise failed to rebut this presumption. Id.;Brown v. S N Communications, Inc., 124 N.C. App. 320,477 S.E.2d 197 (1996). Furthermore, the fact that plaintiff has reached maximum medical improvement does not rebut this presumption or relieve defendants of their burden. Id.
5. As the result of her 17 May 1991 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $244.46 per week for the period of 23 September 1991 through 11 November 1991.
6. As the result of her 17 May 1991 injury by accident, plaintiff is entitled to be paid by defendants ongoing permanent and total disability compensation at the rate of $244.46 per week from 7 December 1991 through the present and continuing until such time as she returns to work or until further order of the Commission. G.S. § 97-29.
7. As the result of her 17 May 1991 injury by accident, plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred or to be incurred, including any related physical and vocational rehabilitation required by plaintiff in the future. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $244.46 per week for the period of 23 September 1991 through 11 November 1991. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall to plaintiff ongoing permanent and total disability compensation at the rate of $244.46 per week from 7 December 1991 through the present and continuing until such time as she returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensations is subject to the attorney's fee approved herein.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as the result of her 17 May 1991 injury by accident, including any related physical and vocational rehabilitation required by plaintiff in the future.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
5. Defendants shall pay the costs due the Industrial Commission.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER